United States District Court
District of Massachusetts

Docket

_____

Gregory, a student with and through
his parents, R.O.
Plaintiff

Vs.

BSEA (Bureau of Special
Education Appeals), and Freetown Lakeville
Public Schools

_____

**Complaint for Judicial Review of Final Decision of the Massachusetts' Bureau of Special Education Appeals Decision for Costs and Fees**

**Preliminary Statement Jurisdiction**

1. This is a civil action brought by Gregory, a young man with disabilities, with his father, R.O. against the Freetown Lakeville Public School District and the Bureau of Special Education Appeals seeking: 1) judicial review of a decision rendered by the Bureau of Special Education Appeals in an administrative action brought by the plaintiffs against the Freetown Lakeville Public School, 2) a declaratory judgment that the Bureau of Special Education Appeals decision failed to grant the plaintiffs the full relief to which they were entitled, and 3) an award of attorneys' fees incurred in the action before the Bureau of Special Education pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, 20

U.S.C. §1415(i)(2) and (3), and 29 U.S.C. §794 and §794a.

3. Venue for this action lies in this district pursuant to 28 U.S.C. §1391(b). All of the events or omissions giving rise to the plaintiffs' claims occurred here and the defendants may be found here.

4. This action arises, under the Massachusetts Special Education Statute MGL c. 71B and its regulations, 29 USC 794, and 20 USC 1400, seeking review of the Decision of the Bureau of Special Appeals (BSEA) pursuant to 20 USC Section 1415 (i)(2)(A). A copy of the BSEA's decision does accompany the primary complaint as Exhibit 1

**Parties**

5. Plaintiff, hereinafter referred to as Gregory, is a 16 year old resident of Lakeville. He resides with his father and paternal grandparents. During all times relevant to the BSEA proceeding and decision complained of herein, Gregory's true identify is set forth in a motion filed with this complaint and is referenced in the BSEA decision attached hereto as Exhibit #1 and is known to all parties.

6. Mr. O. resided, at all times, relative to the actions before the BSEA, in Lakeville, Massachusetts and still does. The true identify of Mr. Or. is set forth in the aforementioned motion field with this Complaint.

7. Defendant, Massachusetts Bureau of Special Education Appeals (BSEA) is an independent subdivision of the Massachusetts Division of Administrative Law Appeals, located at One Congress Street, 11th Floor, Boston, Ma. 02114.

8. The Freetown-Lakeville School District is the school district which is responsible for Gregory's education and the parties who filed the action in the BSEA. Action is being sought against the district.

## FACTS

9. Gregory is a child who has been diagnosed with PTSD and depression and some mental health issues. Gregory is very self-aware of his unique disability and it is causing significant self-esteem issues.

10 Issues which were to be decided by the BSEA based on Defendant's Hearing Request are attached Exhibit 1.

    A. Is the current IEP offered by the school district appropriate for Gregory?

    B. If it is not appropriate what types of services and or placements would be appropriate for Gregory?

The facts and arguments during the multiple day hearing clearly showed that the parties had a lot of issues for the hearing officer. However, given the hearing officers numerous statements that her authority was limited based on the school's hearing request and state and federal law as well the noted two issues are all that the hearing officer appears to be able to decide relative to Gregory. During the course of her

decision, she does have the ability to articulate her concerns as to any party or situation.

11. During testimony at the hearing, Ms. Cote specifically noted in her testimony that Gregory should be placed in all regular education classes with academic support. The basis for that was that he was emotionally distraught in the alternative special education class for English and Math and suffering emotionally due to the current placement.

12. Ms. Cote noted in her testimony that Gregory had substantially changed over the three years that he had been seeing her and that change was a very positive change emotionally and socially.

13. Ms. Cote gave the hearing officer extensive information as to Gregory's emotional state when she first met him, the causes for this, and how he has changed.

14. Ms. Cote articulated Gregory's emotional state dealing with the kids in the special education class as articulated to her during their sessions and how much he wanted to be out of the special education class and moved to regular education classes.

15. Ms. Cote also discussed how distraught Gregory was with the tutoring he was receiving as he was being banned from the regular high school and found this to be inappropriate.

16. Ms. Cote clearly noted that the tutoring was emotionally inappropriate for Gregory and unnecessary and that he should be moved forthwith back to the

        high school and placed in regular education classes which provided both academic and emotional support as to all classes.

17.      Gregory's tutor at the library, in Middleborough, also articulated how difficult it was for Gregory given his emotional behavior and inability to effectively be tutored at an increasing level due to his hatred for being at the library rather than at the school in regular classes with his friends.

18.      During the fall of 2017, the school district had two independent evaluations done one by a Dr. Dorn and the other by Dr. Vautrinot. These 2 evaluations took place at Reed's Collaborative in Middleborough and each took approximately four hours.

18.      The two school evaluators did not view or assess Gregory outside the four hours at Reeds and did not see him or assess him in the community, at home, or at the school as to his possible behaviors and emotions in those particular placements.

19.      The two evaluators were clear that they felt it would be a requirement for Gregory to be placed in a therapeutic day program as they perceived a number of emotional disabilities but as Dr. Dorn said they were somewhat speculative.

20.      Given the very limited time Dr. Dorn and Dr. Vauternalt spent with Gregory and Gregory's testimony about his concern about these two doctors it is a reasonable basis to believe that their ultimate suggestions, symptoms, and speculative diagnosis cannot be taken as fact. During most of their evaluations, they refer to things as speculative, unspecified, impressions, and possible problems.

21. The two doctors seem to agree that Gregory's IQ was in the low 70s however their testing showed an extraordinary split in the scores that make up an IQ being a 46 point split the low being working memory at 59 and high being processing speed at 105. Other scores were scattered within these numbers and Dr. Dorn gave an IQ of 71 however given this extraordinarily high split in numbers it is usual for an evaluator not to give an IQ level given this kind of a split.

22. It should be further noted that during Gregory's testimony his ability to articulate his concerns, speak to his concerns and desires and answer questions reasonably well would support his therapist's position that is IQ is much higher than a 71.

23. It is clear to say that who Gregory is today is not who he was when he came to live with his father in Middleborough. As noted by the school psychologist in the schools Exhibit 28 that his cognitive level as she saw it was also a 70 however the previous test results of 2014 showed an extremely low IQ score which was done at Mass. General Hospital as referred to in testimony that Gregory had an assessed IQ at that point in time of 52 and appeared to be Autistic.

24. Over the course of the hearing, the possibility of autism came up a number of times but the school staff were very strong in their position that he did not currently show any issues that could be deemed to be Autistic.

25. The school district also brought up the fact that Gregory had a tendency to swear quite a bit not just with his friends but from time to time speaking to school staff when in classes and Gregory showed this to the hearing officer to some degree as well.

26. It was also put on the record by Gregory and his father and his therapist that he was working to overcome this extraordinary issue which was created given his numerous levels of trauma suffered by him prior to coming to live with his father. All of the underlying aspects causing the trauma and his language issues were briefly mentioned to the hearing officer but not detailed to not overly stress Gregory.

27. School staff and teachers were also consistent in their testimony stating that they could not meet his needs at the high school, provide him with appropriate services and he should be placed in a therapeutic school. Based on school's testimony compared to that of Gregory, his father, and Gregory's therapist it was clear that the school could meet Gregory's needs.

28. School staff continued to say that he should go back to the Chamberlain school or similar school which could be construed to be a therapeutic day program however such programs are extraordinarily limited in the area and the Chamberlain school has been under substantial concerns, by the Massachusetts Department of Education, and there are currently at least two federal lawsuits dealing with sexual assaults that occurred at the Chamberlain school currently going forward in federal court. Given this situation, father had no interest in sending his son to the Chamberlain school and Gregory had no interest in staying at the Chamberlain school. Note Federal cases number 1:16-cv-12571-IT and 1:17-cv-11781-DJC

29. Gregory voiced his concerns that a lot of the students at Chamberlin were at a level of behaviors that he was afraid of and reported threats of assault against him during the time he was at Chamberlain on a number of occasions.

30. One of the key factors presented to the hearing officer, by Freetown Lakeville school staff, was that Gregory did not demonstrate significant levels of emotional or bad behaviors while in their program for the last three years.

31. There was an incident this past fall where he got into a fight with another student which Gregory testified to, and not disputed by school staff, that the fight was due to ongoing harassment of him by the student.

32. Due to the fight, Gregory was suspended for 10 days and then transferred over to the Chamberlain school which at first Gregory thought was ok but there was no real basis provided in the testimony as to why this was necessary, given that there was absolutely no history of violent behavior by Gregory while in the Freetown Lakeville school system except one occasion where he reacted to the school bully due the ongoing bulling of Gregory by the bully.

33. The school district last witness was the Director of Student Services, Ellen Harrington, a lady with substantial special education experience and history, who testified in support of her staff that it was important for Gregory to go to an alternative therapeutic placement.

34. Miss Harrington however was questioned regarding the current IEP by Gregory's attorney as this was the key piece of evidence that the hearing officer was going to consider and the placement therein.

35. It was Gregory's position and his father that the IEP's were not appropriate for him and father did not want to sign this IEP because he wanted him to go back to the high school as a student and did not see why both placements and the goals were appropriate as noted in the proposed IEP.

36. Ms. Harrington was asked a number of questions regarding exhibit number one of the school district as recognized by the hearing officer as the key document, as to the IEP's appropriateness and if it was legally valid which Ms. Harrington at first claimed it met all state standards and was fully appropriate.

37. Ms. Harrington's testimony, upon cross examination fully and completely admitted the proffered IEP was not appropriate and did not meet state or federal standards, specifically:

38. None of the specific goals of which there were five, had any baselines whatsoever upon which to judge the validity of the specific benchmarks and objectives for each goal.

39. Each of the benchmarks for each of the goals other than the counseling goal specifically speaks to doing things to a particular percentage however those benchmarks do not say at what grade level or what percentage he was currently functioning.

40. To look at each of the goals first section or current performance level must, pursuant to state and federal guidance, include an actual level of performance upon which a reasonable parent could make an assessment of how much growth he was to be able to do in the measurable section of the goal and whether or not that is valid.

41. Therefore if he is supposed to do something three out of four times in the measurable annual goal section it is a requirement to have what he is currently doing in the current performance level.

42. Also if he is to do something 70% of the time in the benchmarks section it is mandatory that within the current performance level a statement of the percentage he is doing now as well and as at what grade level he is functioning at for a parent to be able to understand the goal in its totality.

43. The IEP for ninth grade which has within it a transition plan. However, based on the reading of that transition plan it was not created via an assessment of Gregory but only speculation by the writer and not fully explained based on father's short testimony about it that it was never properly explained to father. What is interesting is on page 2 of the transition plan, the last paragraph essentially says that the family is meeting all of his needs relative to transition but given his unique disability that is totally inappropriate given the fact that no assessment was ever done relative to his transition needs.

44. It should be noted that the IEP has absolutely no baselines in the goals whatsoever again making them totally false. However, it should be noted that goal five is a social skills goal which was ultimately dropped without evaluations to support the removal of this goal and the fact that the school district argued numerous times and gave testimony numerous times that social skills was a significant issue for Gregory. So how and why could remove this goal from the IEP? Clearly another reason why the most current IEP offered to him is grossly invalid.

45. Given Ms. Harrington's admissions that the offered IEP is grossly invalid and inappropriate for Gregory it is not unreasonable for the hearing officer to assume that all of the recommendations to place Gregoary out of district is inappropriate as well. Given his level of needs prior to this school year which was provided by the school district and given his growth over the past few years both academically and emotionally sending Gregory out of school

because of Gregory's reaction to being physically assaulted by another student is totally inappropriate.

## Statement of Claims
### Count I-Request for Judicial Review of the Decision of the State Administrative Agency

45. Plaintiffs re-alleges the allegations set forth in paragraph 1-44 and incorporates the same by reference as if fully set forth herein.

46. The proceedings before the BSEA was brought pursuant to the Individuals with Disabilities Act, 20 USC 1400, Section 504 of the Rehabilitation Act of 1973, 29 USC 749 and Mass Law, MGL c. 71B. The IDEA providers that any party aggrieved by the findings and decisions of state administrative agencies may bring a civil action in a district court of the United States without regard to the amount in controversy 20 USC Section 1415 (i)(2) and (3)(A).

47. The hearing officer found in favor of the District as to all issues brought before the BSEA by the District.

48. The hearing officer's decision contained errors of law and facts and was unsupported by a preponderance of the evidence.

49. The Plaintiffs seek judicial review and reversal of all portions of the decision and orders issued by the BSEA.

50. Despite the contradicted evidence submitted by the Gregory's witnesses regarding the needs, abilities and services owed to Gregory and the gross inadequacies of the IEPs of the school district, yet the hearing officer found and ruled in favor of the District.

51. The plaintiffs seek judicial review and relief as to all portions of the BSEA decision attached hereto.

## Count II- Request for Relief Pursuant to Section 504 of the Rehabilitation Act of 1973, 29 USC 794

52. The Plaintiffs re-allege the allegations set forth in paragraph 1-52 and incorporate the same by reference as if fully set forth herein.

53. Freetown Lakeville is required to provide Gregory with a Free Appropriate Public Education in the least restrictive environment, pursuant to the requirements of Section 504, 34 C.F.R., Section 104.33. This court may award compensatory services and damages to a student with a disability based on a District's failure to provide the student with a Free Appropriate Public Education.

54. The Plaintiffs request that this court determine that Freetown-Lakeville failed to provide Gregory with a Free Appropriate Public Education and that this court determined that Gregory is entitled to an award of compensatory services and such other damages as are appropriate under 29 USC Section 794.

55. The acts and omissions of Free-town Lakeville in failing to provide a Free Appropriate Public Education to Gregory constitute discrimination against him on the basis of his handicap, in violation of 29 USC Section 794.

### Count III- Violation of Americans with Disability Act 42 U.S.C, Section 12101, et.seq.

56. The Plaintiffs re-alleges and incorporates 1-55 herein by reference the allegations contained in paragraphs of their complaint.

57. The acts and omissions of the Freetown-Lakeville and school staff in failing to provide appropriate programs and services for Gregory constitute discrimination against him on the basis of his handicap, in violation of the Americans with Disability Act, 42 USC Section 12101 et.seq.

58. As a direct result of Freetown-Lakeville's discriminatory conduct, the Plaintiffs suffered damages including but not limited to emotional distress and financial damages.

59. As a direct result of the District's discriminatory conduct, Gregory suffered lose educational services to owe him to his direct detriment and did suffer damages.

### Count IV- Fourteenth Amendment of the United States Constitution, 42 USC Section 1983

60. The Plaintiffs re-alleges and incorporates herein by reference the allegations contained in paragraphs 1-59 of their complaint.

61. The acts and omissions of the District, in failing to provide appropriate programs in the least restrict environment and services for Gregory, on the basis of his handicap, violated the Plaintiff's rights under the due process and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

62. As a result of District's illegal conduct, the Plaintiffs suffered damages including but not limited to emotional distress and loss of educational services and placement in an appropriate special education school

## Prayers for Relief

Wherefore, the Plaintiffs pray that this Honorable Court:

1. Assume jurisdiction over all matters.

2. Reverse the hearing officer's final decision and order dated 5-18-2018 as to all issues in the decision.

3. Declare that Plaintiff's met the burden of proof showing that the District's IEPs proposed, were not reasonably calculated to provide Gregory a placement in the least restrictive environment and with FAPE in violation of the IDEA, MGLc 71., and 29 USC chapter 794 and the American with Disability Act and all regulations which deal with education services for special education children.

4. Declare that Plaintiffs met the burden showing that the District did fail to provide Gregory a placement in the least restrictive environment.

5. Declare that the BSEA Decision, through its hearing officer, violated Gregory's rights, under state and federal education laws, by issuing a final decision based upon mistakes of facts and errors of law made upon testimony and procedures not supported by a

preponderance of the evidence unwarranted by the facts on the record, biased, arbitrary and capricious, an abuse of discretion and otherwise not in accordance with the law.

6.  Find that Gregory and his father are the prevailing parties in this matter.

7.  Award Plaintiffs appropriate money damages, reimbursement for legal expenses and services the father had to acquire for Gregory's benefit and any other related costs and fees.

8.  Award the Plaintiff's attorney reasonable costs and fees.

9.  Award such other relief as the court deems just and proper.

The Plaintiffs request this matter be heard before the honorable court as to the issues stated above.

Respectfully submitted,
The Plaintiffs
By their attorney,

s/s Michael W. Turner
Michael W. Turner
Attorney at Law
Post Office Box 910
Marion, Ma. 02738
508-748-2362
BBO#565820


**Certificate of Service**

I hereby certify that this document and the motion to amend is filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent by first class mail, postage prepaid to those indicated as non-registered participants on

/S/ Michael W. Turner

Michael W. Turner